UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KRISTINA CLEAVER,<br><br>Plaintiff,<br><br>v.<br><br>TRANSNATION TITLE & ESCROW, INC. DBA FIDELITY NATIONAL TITLE COMPANY; DOES I through X,<br><br>Defendants. | Case No. 1:21-cv-00031-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Kristina Cleaver filed this action against her former employer, Transnation Title & Escrow, Inc. dba Fidelity National Title Company ("Fidelity"), alleging gender discrimination in violation of federal and state laws. Cleaver designated Kris Miller to opine on discrimination and damage issues. Before the Court is Fidelity's motion to "strike" Miller's report and his testimony under Rule 702 of the Federal Rules of Evidence.[1] The Court heard oral argument on August 16, 2023, and the matter is ripe for disposition. As explained below, the Court grants Fidelity's motion to exclude Miller as an expert witness but otherwise denies Fidelity's remaining requests for relief.

---

[1] Given the case's procedural posture, the Court construes Fidelity's motion to strike as a motion in limine to exclude Miller from testifying as an expert witness at trial.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Fidelity is a title and escrow company that works with real estate agents to process and close real estate transactions. Cleaver worked as a sales executive for Fidelity from June 2019 to March 2021. She alleges Fidelity abruptly removed her from a lucrative account, known as the "Sweet Account," in December 2019 because the account's lead real estate agent, Jeffrey Sweet, refused to continue working with her because she is a woman. Cleaver seeks compensatory damages for lost commissions and has also alleged a punitive damage claim.

On November 19, 2021, Cleaver disclosed Miller as an expert witness in "title and escrow company management and procedures" to opine about discrimination and damages. (Dkt. 27 at p. 1). In his initial report, Miller offered seven enumerated opinions, including opinions about Fidelity's discrimination and Cleaver's damages. (Dkt. 27 at pp. 4-8). Regarding Cleaver's income loss, Miller stated in his report that "Fidelity has not provided Cleaver with complete documents showing the actual income generated by the Sweet Team"; "[a]bsent Fidelity's cooperation," his "numbers are reasonably accurate"; and "Fidelity's failure to provide key documents ([i.e.,] complete closed orders) creates an unnecessary impediment to determine the loss with more accuracy." (*Id.* at p. 8). Miller then affirmatively represents in his initial report that he "will supplement or amend [the] report once [he is] provided with the missing closed orders." (*Id.* at 8).

On the same day that Miller disclosed his initial report, Cleaver moved to compel Fidelity to produce the "closed orders for the entire year [of] 2021." (Dkt. 28 at p. 4.) In support of her motion, Cleaver argued that "it is vital [she] be able to show the amount of revenue generated by the Sweet [A]ccount for Fidelity." (*Id.*). Fidelity opposed the motion, but the Court ruled "the

MEMORANDUM DECISION AND ORDER - 2

Sweet Account closed orders are critical to substantiating a claim for damages," and it granted Cleaver's motion and ordered Fidelity to produce the requested documents. (Dkt. 40 at p. 6).

On March 11, 2023—which was a few weeks before Cleaver's April 18 expert disclosure deadline—Fidelity produced the Sweet Account closed orders for 2021. (Dkt. 45) (setting deadline); (Dkt. 76-1 at p. 4) (stating documents produced). Miller did not supplement or amend his initial report to address Fidelity's 2021 closed orders, however, despite receiving them before the expert disclosure deadline. After that deadline passed, Fidelity deposed Miller. That portion of the deposition transcript which Fidelity provided to the Court suggests Miller received the 2021 closed orders, reviewed them, concluded they were "incomplete," and did not support his "prediction." (Dkt. 76-3 at pp. 20-21). After Miller's deposition, Miller produced a rebuttal report regarding Cleaver's damages. (Dkt. 54).

Fidelity moves to exclude Miller's expert testimony. (Dkt. 76). In support, Fidelity argues that Miller is not qualified to opine on either discrimination or damages and that, even if he were qualified, his opinions are unreliable. Alternatively, Fidelity argues the Court should exclude Miller's testimony because Cleaver designated Miller, a purported competitor of Fidelity, to improperly provide him with access to Fidelity's confidential information.

## ANALYSIS

### A. Rule 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and limits the admissibility of expert testimony in two ways. First, it only permits witnesses with special "knowledge, skill, experience, training, or education," to testify as experts. Second, it limits a qualified expert's testimony to that which "will help the trier of fact to understand the evidence or to determine a fact in issue," is based on "sufficient facts or data," is "the product of

**MEMORANDUM DECISION AND ORDER - 3**

reliable principles and methods," and is "reliably applied" to the facts of the case. Fed. R. Evid. 702(a)-(d).

The Ninth Circuit has summarized the requirements of Rule 702 as follows: "expert testimony must (1) address an issue beyond the common knowledge of the average layman, (2) be presented by a witness having sufficient expertise, and (3) assert a reasonable opinion given the state of the pertinent art or scientific knowledge." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001) (citing *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997)). District courts have broad discretion in applying this test. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).

The district court's role in applying Rule 702 is to be a gatekeeper. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In that role, the court considers both the relevance and reliability of the proffered evidence. *Kumho*, 526 U.S. at 141. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted); *accord Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022). "To carry out its gatekeeping role, a district court must find that an expert's testimony is reliable—an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1316 (9th Cir. 1995)), *cert. denied*, 143 S. Ct. 2509 (2023). Expert opinion evidence is reliable when such knowledge "has a reliable basis in the knowledge and experience of the relevant discipline." *Daubert*, 509 U.S. at 592.

MEMORANDUM DECISION AND ORDER - 4

Effective December 1, 2023, Rule 702 clarified the proponent of expert testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance of evidence. The amendments are intended to correct some courts' prior, inaccurate application of Rule 702. As the Committee Notes to the 2023 Amendment state, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 Comm. Note (1) (effective Dec. 1, 2023). "The Committee concluded that emphasizing the preponderance standard in Rule 702 was made necessary by the courts that have failed to apply correctly the reliability requirements of that rule." *Id*. "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. Comm. Note (2) (discussing amendment of Rule 702(d) to state "the expert's opinion [must] reflect[] a reliable application of the principles and methods to the facts of the case").

1. **Discrimination Opinions**

In his initial report, Miller opines that: (1) Fidelity's removal of Cleaver from the Sweet Account violated its own company policies regarding equal opportunity and harassment; (2) Fidelity's removal of Cleaver from the Sweet Account violated industry standards, regardless of the industry; (3) there is no setting in which removing an employee from an account due to gender is not discriminatory, and therefore, Fidelity's actions were discriminatory; and (4) Fidelity could have declined to remove Cleaver from the account and referred the client to another title company. (Dkt. 27). Fidelity argues the Court should exclude these opinions because they are legal conclusions or would otherwise not be helpful to the jury.

The Court agrees. Miller's general, blanket opinions that Fidelity's removal of Cleaver from the Sweet Account was discriminatory is a legal conclusion. "[A]n expert witness cannot give an opinion as to [a] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also* Fed. R. Evid. 702 (requiring expert opinion assist trier of fact to understand evidence and determine factual question). Although an expert may opine on an ultimate factual issue, Fed. R. Evid. 704(a), he cannot simply tell the jury the result it should reach. *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013). Rather, he must explain the basis for his opinion. *Id.* Miller does not explain the basis for his conclusory opinion that Fidelity discriminated against Cleaver.

Further, Miller's opinions that Fidelity violated its own company policies by removing Cleaver from the Sweet Account and that it had alternatives to removing her from the account do not require any specialized knowledge which would help the jury understand the evidence. *See* Fed. R. Evid. 702(a) (requiring helpful specialized knowledge). Rather, the jury is capable of understanding and drawing its own inferences from the available evidence. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020) (noting expert testimony is inadmissible if jury is capable of understanding and deciding matter without expert's help). Finally, Miller's general, vague opinion that Fidelity violated industry standards, regardless of the industry, is not based on a reliable principle applied to the facts. For example, Miller does not even identify an industry standard. For these reasons, the Court grants Fidelity's motion to exclude Miller's testimony regarding his discrimination opinions.

### 2. Damage Opinions

Fidelity also challenges Miller's opinions regarding Cleaver's damages arguing, among other things, that these opinions are unreliable. The Court, likewise, agrees Miller's damage

opinions fail to meet Rule 702's requirements for admissibility. Miller makes multiple, general statements regarding Cleaver's damages, including that Cleaver's removal from the Sweet Account "affect[ed] her reputation within the industry"; she lost "past income from title and escrow transactions"; she lost "the relative value of the 50% stock match"; and she suffered "a distinct loss of income . . . due in part to 'loss of momentum.'" (Dkt. 27 at pp. 6-8). Miller, however, provides no method for calculating these losses, does not analyze the losses, and does not even state any opinions about the amount of these losses. Accordingly, these "opinions" fail to meet any of Rule 702's requirements.

To reach his remaining damage opinions, Miller relied on a document entitled "Kristina Cleaver Income Loss" ("Income Loss document") (Dkt. 27 at p. 37-38). This document contains calculations for Cleaver's lost income from 2020 through 2025 based, in part, on Cleaver's compensation package, the "growth" of the number of agents on the Sweet team, increases in property values, and an increase in the Sweet team's sales volume. (*See generally id.*). Based on various assumed numbers, the document calculates an "actual revenue lost" of $311,756.50. (*Id.* at p. 38).

Fidelity represents that Cleaver and her counsel prepared the Income Loss document. (Dkt. 76-1 at p. 6). Although Cleaver disputes her counsel was involved in preparing the document, Miller testified during his deposition that, to his knowledge, Cleaver and her counsel prepared the document. (Dkt. 76-4 at p. 6, ll. 11-13) ("Q. It was performed by Plaintiff and her counsel, to your knowledge, correct? A. Correct."). That Miller did not prepare the document, however, is undisputed.

Regarding the Income Loss document, Miller's initial report states:

**MEMORANDUM DECISION AND ORDER - 7**

> I reviewed Cleaver's calculations regarding future losses and agree with her rationale in determining those losses. Although there is no absolute method of determining future income growth from the Sweet Team, I could find no reason to opine that the future escrow and title transactions and resultant income to Cleaver would be less than her calculations. . . . [T]he potential for her income growth derived from transactions generated by the Sweet Team could arguably be predicted as being 30% too low.

(Dkt. 27 at p. 7). Miller then adopts Cleaver's damage number of $311,746.50. Further, he states that "the actual number is 30% greater at $400,000.00-$450,000.00," but he provides no basis or explanation for reaching these numbers. (*Id.* at p. 8).

During Miller's deposition he testified about his wholesale reliance on the Income Loss document, which Cleaver (perhaps with her counsel's assistance) prepared.

> Q. Other than the purported transcript of the December 2019 meeting, a handbook from Fidelity, and a document entitled "Kristina Cleaver Income Loss," you did not review any other documents before preparing your November 19th, 2021, expert report, correct?
>
> A. Correct.
>
> Q. Prior to signing your November 19th, 2021, report, you never reviewed any closed or open orders or any other financial documents of Fidelity, correct?
>
> A. Correct.
>
> Q. You were provided those documents after your November 19th, 2021, report, correct?
>
> A. Correct.
>
> Q. And for purposes of calculating damages in this case for your November 19th, 2021, report, you solely relied on Exhibit C of your report entitled "Kristina Cleaver Income Loss," right?
>
> A. Correct.
>
> Q. The source of the information in the Cleaver income loss document was Kristina Cleaver and Plaintiff's counsel, correct?
>
> A. Correct.
>
> Q. You did nothing to independently confirm any information contained in the Cleaver income loss document prior to signing your report in November 2021, correct?
>
> A. Correct.

**MEMORANDUM DECISION AND ORDER - 8**

> Q. Any calculations or methodology in the Cleaver income loss document of your report was not performed by you, correct?
>
> A. Correct.
>
> . . . .
>
> Q. And you had no involvement in the creation and preparation of the Cleaver income loss document, correct?
>
> A. Correct.
>
> Q. And you know nothing about the methodology or calculations or assumptions supporting the Cleaver income loss document other than what is actually stated on the face of that document, correct?
>
> A. Correct.
>
> Q. And you didn't contribute to any of the methodology or analysis for the Cleaver income loss document, right?
>
> A. Correct.
>
> Q. And you have no mathematical calculations or work by you that document your opinions in this case, correct?
>
> A. Correct.

(Dkt. 76-4 at pp. 4-8).

Based on this testimony, it is evident that Miller is simply parroting Cleaver's method, analysis, and calculations to determine damages. Indeed, in opposition to Fidelity's motion to exclude Miller's testimony, Cleaver states Miller "adopted and ratified those calculations." (Dkt. 79 at p. 3). Cleaver appears to assert that Miller's adoption and ratification of her calculations is enough to satisfy Rule 702, stating "[m]ost importantly, [Miller] testified that the exhibit itself is comprised of his opinions." (Dkt. 79 at p. 10). That, however, is not the case.

An expert witness may not simply act as a conduit to parrot a party's position on an issue. "Expert opinions ordinarily cannot be based upon the opinion of others whether those opinions are in evidence or not." *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985). Rule 703 of the Federal Rules of Evidence "does *not* permit an expert to simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions." *La Gorce*

MEMORANDUM DECISION AND ORDER - 9

*Palace Condominium Assoc., Inc. v. Blackboard Specialty Ins. Co.*, 586 F. Supp. 3d 1300, 1306 (S.D. Fla. 2022) (quotation omitted); *see also Adams v. United States*, No. CIV 03-0049-E-BLW, 2009 WL 2151349, at *1 (D. Idaho July 17, 2009) (ruling expert "cannot just parrot the opinions of others"). Likewise, an expert may not simply parrot or rely on a party's allegations and theories. *Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763-67 (N.D. Ill. 1998). "An expert's obligation is not to form [his] opinions first and then later be apprised of evidence that may support them; [he] must first be apprised of the evidence and *then* form [his] opinions." *Flores v. FCA US LLC*, No. 1:17-CV-00427-JLT, 2019 WL 3231755, at *5 (E.D. Cal. July 18, 2019).

In this case, Miller did not meet this obligation, and the opinions in his initial report do not comply with either the requirements of Rule 702 or of Rule 703. Although Miller did provide a rebuttal report in support of his opinions, that report cannot cure the significant defects with his initial report. As Fidelity notes, a party cannot use a rebuttal report to correct its initial report's deficiencies. Under Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure, rebuttal expert testimony is permitted only when it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Rebuttal expert testimony is limited to "new unforeseen facts brought out in the other side's case." *Century Indem. Co. v. Marine Group, LLC*, 2015 WL 5521986, at *3 (D. Or. Sept. 26, 2015). It cannot be used to advance new arguments or new evidence. *Id.*; *see also Columbia Grain, Inc. v. Hinrichs Trading, LLC*, No. 3:14-CV-115-BLW, 2015 WL 6675538, at *2 (D. Idaho Oct. 30, 2015). Moreover, Cleaver does not respond to Fidelity's argument that Miller's rebuttal report does not cure the defects in his initial report and that she cannot rely on the rebuttal report to prove her case-in-chief.

Finally, Cleaver's reliance on *Elosu*, 26 F.4th 1017, is misplaced. In that case, the district court excluded the plaintiff's expert witness, a fire investigator, who opined about the cause of a

fire which destroyed the plaintiff's cabin, concluding the expert's opinions were "speculative, uncertain and contradicted by multiple eyewitness accounts." *Id.* at 1020. On appeal, the Ninth Circuit noted that "to evaluate reliability, the district court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance" and that ultimately, the test is the soundness of the expert's methodology not the correctness of his opinions. *Id* at 1024 (quotation omitted). Further, the Ninth Circuit noted that "the common thread" in Rule 702's "sufficient facts or data" element requires foundation, not corroboration and that "consistent with the court's gatekeeping function, Rule 702 instructs a district court judge to determine whether an expert had sufficient factual grounds on which to draw conclusions." *Id.* at 1025-26 (quotations omitted). The Ninth Circuit ruled that, contrary to these principles, "the court disregarded much of the expert's scientific analysis, weighed the evidence on the record, and demanded corroboration—factfinding steps that exceed the court's gatekeeping role." *Id.* at 1020.

In contrast to the expert in *Elosu*, Miller's initial opinions—by his own admissions in his deposition—are not based in facts or data or the product of reliable principles and methods. Rather, Miller simply adopts and ratifies Cleaver's version of the facts and data and her unproven method for calculating her damages based on that version. Miller exercised no expertise in establishing a method to calculate damages, and his opinions are not based on any independent analysis of any facts or data. Accordingly, the Court concludes Miller's damage opinions fail to satisfy Rule 702 and grants Fidelity's motion to exclude Miller's testimony about his damage opinions.

Because the Court excludes Miller's expert testimony, it does not address Fidelity's argument that Miller should be excluded as a sanction under Rule 37 of the Federal Rules of Civil Procedure. Further, the Court denies Fidelity's other requests, including that Cleaver's Income

Loss document be "stricken"; that Cleaver be precluded from testifying about the information (although the Court will entertain appropriate, pretrial motions in limine regarding the information); and that the Court reconsider the prior order awarding attorney fees related to her motion to compel.

## ORDER

IT IS ORDERED that:

1. Fidelity's Amended Motion to Strike the Expert Report and Testimony of Kris Miller (Dkt. 76) is GRANTED in part and DENIED in part.

DATED: January 29, 2024

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 12